UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BOBBY L. STEVERSON,

    Plaintiff,

v.                                      Case No. 8:22-cv-1462-CEH-AEP

RICKY DIXON, *et al.*,

    Defendants.
_____/

## ORDER

Plaintiff, a Florida prisoner incarcerated at Hardee Correctional Institution (HCI), initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1). He alleges defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution in exhibiting deliberate indifference to his serious medical needs. As relief, he seeks compensatory and punitive damages, and injunctive relief prohibiting 1) the medical defendants from ever treating him again, and 2) his placement in a prison other than Polk C.I., Avon Park C.I., HCI, or Zephyrhills C.I. After examining the complaint in accord with 28 U.S.C. § 1915A,[1] the Court concludes that the complaint must be dismissed because

---

1 Section 1915A provides that a Court shall review a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and shall dismiss same, or any portion thereof, if the Court determines that the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be

1

it fails to state a claim upon which relief may be granted against some defendants.

**I. Ricky Dixon**

Defendant Dixon is the Secretary of the Florida Department of Corrections (DOC). He is sued in both his individual capacity and his official capacity (Doc. 1 at p. 2). The Eleventh Amendment bars Plaintiff's claim for damages against Defendant Dixon in his official capacity. *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (concluding Secretary of Florida Department of Corrections, sued in official capacity, was immune from § 1983 suit under Eleventh Amendment).

To the extent Plaintiff sues Defendant Dixon in his individual capacity, he alleges no causal connection between Defendant Dixon and the alleged constitutional violations. Plaintiff alleges his grievance appeals to the Office of the Secretary put Defendant Dixon on notice of "the problems with [his] medical treatment[,]" and Defendant Dixon "chose to ignore [his] pleas for help." (Doc. 1 at p. 14). But no allegation or document attached to the complaint suggests Defendant Dixon had actual notice of the grievances or denied the grievances. Moreover, the grievances themselves do not suggest that he did because they were signed by other individuals (Doc. 1-1 at docket p. 9; Doc. 1-2 at docket p. 5; Doc. 1-3 at docket p. 5; Doc. 1-4 at docket p. 5). Thus, the grievances are insufficient to establish that Defendant Dixon knew of and ignored the alleged constitutional deprivation. *See, e.g., Zerby v. McNeil*,

---

granted[.]"

2010 WL 2711658, at *5 (May 14, 2010), *report and recommendation adopted*, 2010 WL 2711469 (N.D. Fla. July 6, 2010) (allegations showed no connection between the Secretary and the alleged constitutional violation where there was no suggestion the Secretary had actual notice of grievance or that the Secretary was otherwise causally connected to the alleged constitutional violation). Finally, even if Defendant Dixon knew of the grievances, he did not ignore Plaintiff's "pleas for help." When Plaintiff first mentioned wanting to see an oral surgeon in a grievance appeal to the Secretary's Office, the grievance was approved to the extent Plaintiff was referred to an oral surgeon (Doc. 1-2 at docket pp. 4-5). Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Dixon.

## II. Centurion

Centurion contracts with the Department of Corrections to provide medical services (Doc. 1 at p. 2). Plaintiff alleges Centurion "through its employees, and by company policy, provided indifferent medical care to Plaintiff. . . ." (*Id.* at p. 14).

Constitutional liability exists against Centurion only if it had an unconstitutional policy or custom that caused the alleged deprivation of constitutional rights. *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) (affirming "the district court's finding that the *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates."). A corporation may not

3

be held liable under section 1983 on a theory of *respondeat superior*. *Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 917 (11th Cir. 2017). Rather, a plaintiff must allege a policy or custom of deliberate indifference that led to violation of a constitutional right. *Morris v. Johnson*, 2017 WL 3492874, at *4 (N.D. Fla. July 13, 2017).

Plaintiff's allegation that Centurion provided "indifferent medical care" "by company policy" is vague and therefore insufficient to show Centurion had a policy that caused a constitutional violation. *See Evans v. Mascara*, 2009 WL 10674199, at *1 (S.D. Fla. Dec. 3, 2009), *report and recommendation adopted*, 2010 WL 114240 (S.D. Fla. Jan. 12, 2010) ("Boilerplate allegations of policy or custom, without supporting facts, are insufficient to sustain a § 1983 claim."). Although Plaintiff alleges Dr. Miller stated, "the company he works for would not approve an outside consult" (Doc. 1 at p. 18), the statement is vague because it is not clear whether a consult was denied after considering Plaintiff's circumstances or under a policy refusing outside consults. Moreover, in his grievances Plaintiff alleged Dr. Miller did not send him for a consult because "he didn't need to see an oral surgeon" (Doc. 1-2 at pp. 2, 4), "he does not know if outside regional would approve [a consult] or not" (Doc. 1-3 at p. 4), and he "believe[d] the request to see an oral surgeon would be denied" (Doc. 1-4 at p. 2).

Plaintiff alleges insufficient facts showing a constitutional violation by Centurion. Thus, the claim against Centurion is subject to dismissal.

### III. Dental Assistant W. Edwards

Plaintiff alleges Defendant Edwards, a dental assistant,

> "was in charge of processing emergency dental sick call requests. She failed to process all the sick call requests submitted by the Plaintiff, and she failed to relay the full content of Plaintiff's problems possibly causing some of Plaintiff's problems and prolonging Plaintiff's pain."

(Doc. 1 at p. 15).

Plaintiff must allege factual allegations sufficient enough to raise a right to relief above the speculative level and to provide factual specifics beyond mere labels and conclusions, or a formulaic recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plaintiff must plead enough facts to state a plausible basis for the claim. *Twombly*, 550 U.S. at 555-56. Plaintiff fails to do so here. Although he alleges Defendant Edwards failed to process all sick call requests and "relay the full content of Plaintiff's problems," he alleges no facts showing which requests were not processed, which problems were not "relayed," and how those failures contributed to the alleged deprivation of medical care. In alleging Defendant Edwards "possibly caus[ed] some of Plaintiff's problems," and that he "does not know if [Defendant Edwards] advised the dentist of all of claimant's complaints on his emergency sick call slips. Her full culpability will have to be decided later" (Doc. 1-5 at p. 5), he fails to raise his right to relief beyond the speculative level. Accordingly, he fails to state a claim for relief against Defendant Edwards.

**IV. Dr. Burgos-Polo, Dr. Solorzano-Pallais, Dr. Miller, and Nurse Uney**

Plaintiff alleges the above medical providers were deliberately indifferent to his serious medical needs. "The United States Supreme Court has determined that deliberate indifference to a prisoner's serious medical condition may violate the Eighth Amendment prohibition against 'cruel and unusual punishment.'" *Davis v. Bay Cty. Jail*, 155 So. 3d 1173, 1175 (Fla. 1st DCA 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). Being deliberately indifferent, or purposefully ignoring serious medical needs of prisoners amounts to cruel and unusual punishment. *Id.* A claim of inadequate medical care has two components, an objective one and a subjective one. *Evans v. St. Lucie Cty. Jail*, 448 F. App'x 971, 974 (11th Cir. 2011).

For the objective component of a claim for inadequate medical care, the plaintiff "must demonstrate 'an objectively serious medical need, one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)). A serious medical need may be "one diagnosed by a physician as mandating treatment or one so obvious that even a lay person would 'easily recognize' the need for a doctor's attention." *Race v. Bradford Cty., Fla.*, 2019 WL 7482235, at *8 (M.D. Fla. Aug. 20, 2019) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009)). A serious medical need may also "be determined by whether delay in treatment worsened the condition." *Id.* (citing *Mann*, 588 F.3d at 1307). "In either case, the medical need must be one that, if left unattended, poses a

6

substantial risk of serious harm." *Id*. (quoting *Mann*, 588 F.3d at 1307).

To meet the subjective component, the "plaintiff must show (1) the official had subjective knowledge of a risk of serious harm and (2) disregarded that risk (3) by conduct that exceeds gross negligence." *Id*. (citing *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). Whether an official has subjective knowledge may be shown through circumstantial evidence, but not by imputed or collective knowledge. *Id*. (citing *Goebert*, 510 F.3d at 1326; *Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty.*, 871 F.3d 1272, 1280 (11th Cir. 2017)). An official disregards a risk by conduct that exceeds gross negligence where he "knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate...." *Id*. (quoting *Nam Dang*, 871 F.3d at 1280). A delay in treatment, or provision of treatment that is "so cursory as to amount to no treatment at all" also fulfills these elements. *Id*. (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).

"The meaning of 'more than gross negligence' is not self-evident but past decisions have developed the concept." *Id*. (quoting *Goebert*, 510 F.3d at 1327). It is not sufficient for conduct to be an accident or mistake, negligent, malpractice, or a difference of medical opinion. *Id*. (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)). "Instead, medical treatment must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

Where the claim is based on a delay in providing medical care, the Eleventh Circuit considers "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Id*. (citing *Goebert*, 510 F.3d at 1326). Where the case is based "on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" *Gandy v. Bryson*, 2016 WL 4385851, at *9 (S.D. Ga. Aug. 15, 2016) (quoting *Blanchard v. White Cty. Det. Ctr. Staff*, 262 F. App'x 959, 964 (11th Cir. 2008)).

Plaintiff alleges he went to see Dr. Burgos-Polo on February 23, 2021, because he had a toothache (Doc. 1 at p. 16). Attempting to save the tooth, Dr. Burgos-Polo filled the tooth (*Id*.; Doc. 1-1 at docket p. 5). Plaintiff told Dr. Burgos-Polo the filling was too "high," but Dr. Burgos-Polo ignored him (Doc. 1 at p. 16). The toothache continued, and Plaintiff had pain while chewing (*Id*.).

Plaintiff submitted an emergency sick-call request to dental on Friday, February 26, 2021 (*Id*.). However, dental could not see him that day (*Id*.). He returned to dental on Monday, March 1, 2021, but the dental hygienist told him no dentist comes to the prison on the first Monday of each month (*Id*.). The hygienist gave Plaintiff medicine for pain and told him he was scheduled to see the dentist the next day, March 2, 2021 (Doc. 1-1 at docket p. 2).

Dr. Burgos-Polo saw Plaintiff on March 2, "ground down" the filling, and told

8

Plaintiff the tooth would be extracted "if no improvement was noted in 7-10 days." (Doc. 1 at p. 16; Doc. 1-1 at docket p. 5). Plaintiff continued to have pain and attempted to return to the dentist on March 3, 2021, but could not go because he had to do his "legal rounds." (Doc. 1-1 at docket p. 3). He returned to dental on March 4, 2021, and Dr. Burgos-Polo extracted Plaintiff's tooth, which temporarily relieved Plaintiff of his pain (*Id*.; Doc. 1 at pp. 16-17; Doc. 1-1 at docket p. 5).

Approximately 8 to 10 hours later, Plaintiff had "seizure type jerks" and a high fever (Doc. 1 at p. 17). He declared a medical emergency, went to the medical department, medical believed Plaintiff had an infection from the extraction of the tooth, Plaintiff was given a shot of antibiotics and admitted to the infirmary, and he was released from the infirmary the next day (*Id*.; Doc. 1-1 at docket p. 3).

"Over the next several weeks," Plaintiff had a "severe infection." (Doc. 1 at p. 17). Plaintiff was treated by Defendants Dr. Miller and Nurse Uney (*Id*.; Doc. 1-1 at docket pp. 6). Plaintiff received four different antibiotics for the infection and four shots of pain killers, "Ibuprofen and non-aspirin" were available to him every four hours, and he was placed on special diets (liquid then "mechanical") due to the pain in his mouth and jaw (Doc. 1 at pp. 17-18; Doc. 1-1 at docket p. 6). Plaintiff saw Dr. Miller and Nurse Uney every Friday between March 12, 2021, and June 4, 2021 (Doc. 1 at p. 18).

On an unspecified date, Plaintiff asked Dr. Miller if he would refer him "for an

outside consult." (*Id.*). Dr. Miller responded, "we will see." (*Id.*). On April 14, 2021, Plaintiff received a "Covid shot" and saw Nurse Uney, who told him he "would be seeing an oral surgeon." (Doc. 1-2 at docket p. 2). On April 15, 2021, he wrote to Dr. Miller and Dr. Uney to inform them the shot made him sick, and the swelling in his face went down and the headache was gone (*Id.*). On April 16, 2021, Plaintiff saw Dr. Miller and told him he still "could not fully open his mouth." (*Id.*). Dr. Miller told Plaintiff he did not need to see an oral surgeon and only needed an anti-inflammatory drug (*Id.*).

On April 27, 2021, Plaintiff submitted a grievance to the Warden's office in which he complained he could not fully open his mouth, his mouth hurt again while chewing, he had not received an anti-inflammatory drug, and he had not been referred to an oral surgeon (*Id.*). In response on May 14, 2021, Defendant Dr. Solorzano-Pallais stated:

> A review of your medical record indicates you were seen for your sick call request 4/15/2021 and you verbalized to medical and dental staff that your issues were resolving. If you have any health concerns, you will need to follow the proper process to get medical/dental attention. You will need to advise healthcare staff of your issues so that you can be seen with a possible referral to a Specialist. Access healthcare services via the proper way.

(Doc. 1-2 at docket p. 3).

On May 21, 2021, Plaintiff submitted an appeal grievance to the Secretary's Office in which he conceded his swelling and headache were relieved but complained

10

he still was having difficulty with chewing and fully opening his mouth (Doc. 1-2 at docket p. 4). He requested the Secretary "[f]ix the problem, make it so I can fully open my mouth & chew without pain." (*Id*.). The grievance was approved to the extent Plaintiff was informed he would be seen by the "RMC Oral Surgeon." (Doc. 1-2 at docket p. 5).

On May 5, 2021, Plaintiff submitted a grievance in which he complained he still was having pain with chewing and difficulty fully opening his mouth, and his May 5, 2021 medical appointment either never was scheduled or was cancelled (Doc. 1-3 at docket p. 2). In response on May 19, 2021, Defendant Dr. Solorzano-Pallais stated:

> A review of your medical and dental record indicates that - contrary to your belief, you are being treated for your condition. Even though you feel your condition is not healing quick enough to your satisfaction, it is progressing satisfactorily. Six (6) weeks ago you had had swelling to your face, jaw, and cheek inside your mouth. Today you have none. Six (6) weeks ago you could barely open your mouth but today you have full range of motion with some stiffness. You have some paresthesia tingling in the same area that is normal as the final lingering inflammation resolves. You will need to allow time for your body will return to normal. If you are being referred for Specialist review, without attempting to treat your condition first, the outside regional approval for Specialist visit will not be given. This was explained to you by Dr. Miller previously but you refuse to accept his answer. Please allow time for your condition to go return to normal, as your body will continue to heal itself. Treatment has been provided.

(Doc. 1-3 at docket p. 3). In response to Plaintiff's June 2, 2021 appeal grievance, the Secretary's Office essentially said Plaintiff was grieving the same issue asserted in his prior grievance (Doc. 1-3 at docket p. 5).

On May 8, 2021, Plaintiff submitted another grievance in which he stated he saw Dr. Miller on May 7, 2021, and Dr. Miller told him he did not believe Plaintiff met the "company's" criteria to see an oral surgeon (Doc. 1-4 at docket p. 2). Plaintiff asked to be referred to either an oral surgeon or another medical professional who could help with the pain while chewing and inability to fully open his mouth (*Id.*). In response on May 28, 2021, the Warden's representative stated:

> Your request for administrative appeal has been received and reviewed. This issue was addressed in your previous formal grievance # 2105-501-031. You were advised that treatment was provided and that you will need to allow time for healing.

(Doc. 1-4 at docket p. 3). In denying Plaintiff's June 3, 2021 appeal grievance, the Secretary's Office stated:

> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.
>
> It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.
>
> Records reviewed indicate that you were seen by the Oral Surgeon on 06/29/2021, where you could address your medical concerns at that time.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(Doc. 1-4 at docket p. 5).

Plaintiff concedes he saw an oral surgeon in June 2021, and states he remained under the surgeon's care until September 2021 (Doc. 1 at p. 18).

A. Dr. Burgos-Polo

Dr. Burgos-Polo is the dentist who initially treated Plaintiff. Plaintiff alleges Dr. Burgos-Polo "denied [him] proper dental treatment even though the swelling of [his] face, and Plaintiff's verbal cries of pain, obviously called for outside dental care." (Doc. 1 at p. 14).

Plaintiff's allegations, at worst, show no more than medical negligence by Dr. Burgos-Polo. When Plaintiff first complained of pain from his tooth on February 23, Dr. Burgos-Polo attempted to save the tooth by inserting a filling. A few days later when Plaintiff returned and complained of continuing pain, he was given pain medication and scheduled for an appointment on March 2. Dr. Burgos-Polo saw Plaintiff on March 2, "ground" the filling, and told Plaintiff he would consider extracting the tooth in 7-10 days if his pain persisted. When Plaintiff returned on March 4, Dr. Burgos-Polo extracted the tooth. Plaintiff alleges no further dental appointments with or treatment from Dr. Burgos-Polo.

Plaintiff appears to complain Dr. Burgos-Polo did not consider treating him for an infection. But Plaintiff's allegations do not show Plaintiff had an infection when Dr. Burgos-Polo provided dental care. Rather, Plaintiff alleges the infection arose after the tooth was pulled, and the infection was immediately treated with antibiotics. Dr. Burgos-Polo's conduct is judged based on information available to him when he treated Plaintiff. *See Williams v. Mehra*, 186 F.3d 685, 692 (6th Cir. 1999) (quoting

13

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that "the standard is not whether there is something easy that the doctors, with the benefit of hindsight, could have done. It is whether they 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'").

Plaintiff also appears to allege Dr. Burgos-Polo should have referred him for "outside dental care." But Dr. Burgos-Polo was a dentist charged with treating prisoners' dental issues such as Plaintiff's toothache. No allegation shows Plaintiff was experiencing a dental issue for which Dr. Burgos-Polo was not qualified to assess and treat. Even assuming Dr. Burgos-Polo's treatment of Plaintiff was negligent, this allegation is insufficient to state a claim of deliberate indifference. The standard for deliberate indifference requires that a defendant knows of and disregards a substantial risk of serious harm to an inmate's health or safety. *Farmer*, 511 U.S. at 837-38; *see also Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (explaining that imperfect medical treatment, "although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain.").

Considering Plaintiff's allegations, the course of treatment undertaken by Dr. Burgos-Polos did not violate Plaintiff's constitutional rights as it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotation marks and citation omitted). And to the extent Plaintiff alleges Dr. Burgos-

14

Polo's treatment was deficient because he suffered adverse consequences after his tooth was pulled, he is likewise entitled to no relief. This claim amounts to, at most, medical negligence. However, as explained, the facts must allege more than medical malpractice. *See Estelle*, 429 U.S. at 104–07; *see also Farmer*, 511 U.S. at 835–36 (finding a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.). Accordingly, Plaintiff's complaint fails to state a claim against Dr. Burgos-Polo for deliberate indifference to his serious medical needs.

B. Dr. Solorzano-Pallais

Dr. Solorzano-Pallais is the Chief Health Officer who responded to two grievances Plaintiff filed regarding his medical care after his tooth was extracted. Plaintiff alleges Dr. Solorzano-Pallais was deliberately indifferent to his serious medical needs because she "den[ied] Plaintiff help without ever seeing Plaintiff in person." (Doc. 1 at p. 18).

To the extent Plaintiff attempts to hold Dr. Solorzano-Pallais liable for denying his grievances when Plaintiff complained he could not fully open his mouth and had pain when chewing, the claim must be dismissed. "Merely denying grievances is not 'personal participation' that will support a cause of action under § 1983." *Snyder v.*

*Harris*, 406 F. App'x 313, 319 (10th Cir. 2011).

Plaintiff's allegations against Dr. Solorzano-Pallais also fail to state a claim of deliberate indifference. Dr. Solorzano-Pallais reviewed Plaintiff's grievances and medical records. She informed Plaintiff that his medical records revealed he had informed his medical providers his symptoms were "resolving," the swelling was gone, and the range of motion in his jaw had improved (Doc. 1-2 at docket p. 3; Doc. 1-3 at docket p. 3). She never denied Plaintiff any medical care. Rather, she informed Plaintiff that considering the improvements in his condition, referral to an outside specialist would not be approved "without attempting to treat your condition first. . . ." (Doc. 1-3 at docket p. 3). When Plaintiff's symptoms persisted, he was referred to an oral surgeon.

These facts fail to show that Dr. Solorzano-Pallais knew of a risk of serious harm to Plaintiff and disregarded that risk. Plaintiff's symptoms were improving with the treatment he was receiving. That Plaintiff believed he should have been referred to an oral surgeon earlier is no ground for deliberate indifference. *See Harris*, 941 F.2d at 1505 ("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment."). Moreover, Dr. Solorzano-Pallais was not deliberately indifferent in denying the grievances without examining Plaintiff because she could rely on the medical records and expertise of Plaintiff's health care providers.

16

*See, e.g., Johnson v. Snyder*, 444 F.3d 579. 585–86 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n. 1 (7th Cir. 2013) (health care administrator who reviewed medical records and relied on doctor's diagnosis in responding to inmate's grievance was not deliberately indifferent).

C. Dr. Miller and Nurse Uney

Plaintiff's allegations indicate Dr. Miller and Nurse Uney treated Plaintiff after he caught the infection. They initially treated him with multiple antibiotic shots and medications. And they saw him at least once a week between early March and early June, 2021. His symptoms improved. However, Plaintiff continued to have problems opening his mouth and pain while chewing. Dr. Miller told him he needed anti-inflammatory medication but never provided it to him. And Nurse Uney told Plaintiff she was "lost" at how to treat him, and he would be sent for an "outside consult" but delayed in doing so.

Plaintiff alleges Defendants Miller and Uney failed to provide or delayed in providing him with medical treatment. The denial or delay of necessary medical treatment for non-medical reasons can result in deliberate indifference. *See Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994). Thus, Plaintiff's factual allegations about Dr. Miller and Nurse Uney are at least sufficient at this stage to nudge his "claims across the line from conceivable to plausible," such that the Court cannot conclude that Dr. Miller and Nurse Uney were not deliberately indifferent to Plaintiff's

17

serious medical needs. *Twombly*, 550 U.S. at 570.

## V. Request for injunctive relief

Plaintiff requests the Court enjoin the Defendants from incarcerating him at any prison other than Polk C.I., Avon Park C.I., HCI, or Zephyrhills C.I. Prisoners have no constitutional right to be housed at one facility or another. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Accordingly, this request for injunctive relief must be dismissed.

Plaintiff's request that none of the medical defendants ever be allowed to treat him again likewise must be dismissed. Prisoners have no right to a medical provider of their choice. *See, e.g., United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985) ("The Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing.") (citation omitted).

Accordingly:

1. The complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

   a. If Plaintiff wishes to amend his complaint to remedy the noted deficiencies, he shall file an amended complaint within **THIRTY (30) DAYS** of the date of this Order.

   b. To amend his complaint, Plaintiff must complete a new civil rights complaint form, titling it "Amended Complaint." The amended complaint must include all of Plaintiff's claims and may not refer to, or incorporate, the original complaint. The amended complaint shall supersede the initial complaint. *Malowney v.*

*Fed. Collection Deposit Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999).

      c. The amended complaint will be subject to initial screening under 28 U.S.C. § 1915A.

2. If Plaintiff fails to file an amended complaint within thirty days or fails to seek an extension of time to do so, this action will be dismissed without prejudice.

3. Plaintiff must advise the Court of any change of address. He must entitle the paper "Notice to the Court of Change of Address" and must exclude any motions from the notice. Failure to inform the Court of an address change may result in the dismissal of this case without further notice.

4. The Clerk is directed to mail a copy of both the standard prisoner civil rights complaint form and this Order to Plaintiff.

**ORDERED** in Tampa, Florida, on April 10, 2024.

Charlene Edwards Honeywell
United States District Judge

Copy to: Plaintiff, *pro se*