## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BOBBY L. STEVERSON,

      Plaintiff,

v.                          Case No. 8:22-cv-1462-CEH-AEP

RICKY DIXON *et al.*,

      Defendants.

_____/

## <u>ORDER</u>

Before the Court are Defendants' Motion for Final Summary Judgment (Motion) (Doc. 35) and Plaintiff's opposition (Doc. 37). Upon consideration, the Motion will be granted.

## I. Factual Background[1]

Plaintiff is a Florida prisoner confined at Hardee Correctional Institution (HCI). Defendants are Ashley Uney, a nurse at HCI, and Dr. Dwayne Miller, a dentist at HCI.

On February 22, 2021, Plaintiff submitted an Inmate Sick-Call Request form in

---

[1] In considering the Motion, the factual background derives from the sworn amended complaint, affidavits, and other evidence submitted by Plaintiff and Defendants in support of, or in opposition to, the dispositive motion. For ruling on Defendants' Motion, the Court construes the facts in the light most favorable to Plaintiff. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006) (in deciding a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor).

1

which he complained of severe tooth pain (Doc. 35-1, Ex. A). On February 23, 2021, Dr. Burgos-Polo filled the tooth (Doc. 14 at p. 14). On February 26, 2021, Plaintiff submitted another Inmate Sick-Call Request form in which he stated that despite taking medication, the tooth was still hurting him and asked to have the tooth pulled (Doc. 35-2, Ex. B). The dental department received the form on March 1, 2021, and Plaintiff was informed that he would "be scheduled for the first available sick call appointment." (*Id*.).

On March 4, 2021, Plaintiff submitted another Inmate Sick-Call Request form in which he complained of pain and swelling and asked to see the dentist for medication or to have the tooth pulled (Doc. 35-3, Ex. C). Plaintiff was seen the same day by Dr. Burgos-Polo who extracted Plaintiff's tooth (Doc. 35-4, Ex. D). Later that night, Plaintiff, who had a fever, was given ice packs, Ibuprofen, and Motrin for the pain, injected with an antibiotic, prescribed an oral antibiotic, and admitted to the infirmary for observation (Doc. 35-4, Ex. D; 35-5, Ex. E; 35-6, Ex. F; Doc. 37, p. 2, ¶ 10).

On March 5, 2021, Dr. Miller saw Plaintiff in the infirmary (Doc. 35-4, Ex. D). He noted that Plaintiff was complaining of pain and soreness and observed that Plaintiff had normal jaw opening but swelling to the right side of his face (*Id*.). He planned to continue to evaluate Plaintiff (*Id*.).

On March 9, 2021, Plaintiff submitted another Inmate Sick-Call Request form in which he complained that he still had swelling and could not chew his food and

2

requested a liquid diet and more antibiotics (Doc. 35-8, Ex. H). Dr. Miller saw Plaintiff the same day and noted that Plaintiff had more swelling than he had on March 5th (Doc. 35-9, Ex. I). He prescribed more antibiotics, painkillers, and a liquid diet and noted that Plaintiff would receive an injection of a painkiller to help with the pain (*Id.*). He scheduled a follow-up appointment with Plaintiff for March 12, 2021 (*Id.*). Plaintiff also saw Nurse Uney, who examined Plaintiff and ordered the painkiller injection, more antibiotics, more oral pain medicine, and a follow-up appointment in three days (Doc. 35-10, Ex. J; 35-5, Ex. E; 35-7, Ex. G).

Plaintiff followed up with Dr. Miller and Nurse Treadway on March 12, 2021. Dr. Miller noted the swelling in Plaintiff's face, that Plaintiff stated the injection helped his pain, and that Plaintiff would receive another injection of painkiller (Doc. 35-9, Ex. I). Plaintiff was given the injection and placed in the infirmary for observation (Doc. 35-7, Ex. G; Doc. 35-11, Ex. K). Nurse Uney ordered two more painkiller injections for Plaintiff (Doc. 35-12, Ex. L).

On March 13, 2021, a nurse noted that Plaintiff still had swelling but stated that he was "feeling a lot better today" and was "ready to get out of [the infirmary] and go back to [his] dorm." (Doc. 35-11, Ex. K). Plaintiff was released from the infirmary (*Id.*).

On March 15, 2021, Plaintiff saw Nurse Uney, who scheduled additional lab work and a follow-up appointment in two to three days (Doc. 35-12, Ex. L; Doc. 35-13, Ex. M; Doc. 35-14, Ex. N). On March 17, 2021, Plaintiff was examined by a nurse

(Doc. 35-14, Ex. N).[2] The nurse noted that Plaintiff had swelling, that his laboratory work was pending, and a CT scan would be ordered (*Id.*). Nurse Uney noted that the results of Plaintiff's lab work were received, and a request for the CT scan was e-mailed to the Regional Medical Director (Doc. 35-15, Ex. O).

On March 18, 2021, Plaintiff saw Nurse Uney (Doc. 14, p. 16). He told her he was in pain, and she responded that she was "lost" on how to treat him (*Id.*). She also told him that Dr. Solorzano-Pallais had denied her request for an outside consultation for Plaintiff because it was a "dental" issue (*Id.*). Nurse Uney discussed Plaintiff's case with the Chief Health Officer, who recommended starting Plaintiff on two antibiotics, Doxycycline and Bactrim (Doc. 35-15, Ex. O). Nurse Uney ordered those antibiotics (Doc. 35-12, Ex. L).

On March 19, 2021, Plaintiff saw Nurse Uney and Dr. Miller. Nurse Uney noted that Plaintiff's swelling was reduced, Plaintiff reported improvement of his pain, Plaintiff was smiling and appeared to be feeling better, Plaintiff was scheduled for a CT scan, and the plan was to continue antibiotics (Doc. 35-16, Ex. P; 35-17, Ex. Q). Plaintiff asserts that he said nothing about reduced pain, and the plan was that he would see an oral surgeon soon (Doc. 37, p. 4, ¶ 20). Dr. Miller noted that most of Plaintiff's swelling was gone, but Plaintiff could not fully open his mouth (Doc. 35-18,

---

[2] The medical records indicate that the Chief Health Officer was also present during the examination. However, Plaintiff asserts that he did not see the Chief Health Officer (Doc. 37, p. 4, ¶ 17).

Ex. R). Dr. Miller also noted that Plaintiff was "feeling much better," and the medical department had prescribed more antibiotics (*Id.*). He scheduled Plaintiff for a follow-up appointment in one week (*Id.*). Plaintiff denies that he told Nurse Uney that there was substantial improvement of his pain and that he told Dr. Miller that he was "feeling much better." (Doc. 37, p. 4, ¶¶ 20, 21).

On March 22, 2021, Plaintiff underwent more bloodwork and a CT scan (Doc. 35-17, Ex. Q; Doc. 35-19, Ex. S). Plaintiff saw Dr. Miller again on March 26, 2021 (Doc. 35-18, Ex. R). Dr. Miller noted that Plaintiff had swelling and limited mouth opening, but no pain (*Id.*). The plan was to have Plaintiff continue taking his antibiotics and follow up with him (*Id.*). Plaintiff denies that he told Dr. Miller that his pain was gone (Doc. 37, pp. 4-5, ¶ 23). And he asserts that Dr. Miller said, "maybe we need to send you to an oral surgeon." (*Id.*).

Plaintiff saw Dr. Miller again on April 2, 2021 (Doc. 35-20, Ex. T). Dr. Miller prescribed a "mechanical diet pass." (*Id.*). Plaintiff contends that he asked Dr. Miller when he would see an oral surgeon, and Dr. Miller responded that if Plaintiff were not in prison, Dr. Miller would have already sent him to see an oral surgeon (Doc. 14, p. 17). According to Plaintiff, Dr. Miller also said he would not submit the paperwork requesting an appointment with an oral surgeon because he did not believe the company would pay for it (*Id.*).

On April 10, 2021, Plaintiff submitted an Inmate Sick-Call Request form stating that the swelling on his face and a headache had returned since he stopped taking the

antibiotics (Doc. 35-21, Ex. U). On April 12, 2021, Plaintiff saw Nurse Uney (*Id.*). Nurse Uney noted the swelling on Plaintiff's face (*Id.*). She planned to obtain more lab work, email Dr. Hernandez for a possible referral to an ENT doctor or guidance on caring for Plaintiff, and have Plaintiff follow up in three days (*Id.*). The lab work was done that same day (Doc. 35-22, Ex. V). Plaintiff asserts Nurse Uney told him that he would see an oral surgeon (Doc. 37, p. 5, ¶ 25).

On April 14, 2021, Nurse Uney noted that Plaintiff was referred to the dentist (Doc. 35-23, Ex. W). She also noted that she had consulted with the Regional Medical Director, who suggested referring Plaintiff to an oral surgeon (*Id.*).

On April 15, 2021, Plaintiff submitted an Inmate Sick-Call Request form in which he informed "Dr. Uney" that he "woke up this morning and [his] headache [was] gone, and the swelling seem[ed] to be less." (Doc. 35-25, Ex. Y). Although he acknowledged he would "follow doctor's orders," he recommended that they "give it another week before [making] a decision about an oral surgeon." (*Id.*). Plaintiff also submitted an Inmate Sick-Call form to Dr. Miller in which he informed him that his facial swelling "went down a lot," he could open his mouth "a lot further," and it "did not hurt to eat breakfast this morning." (Doc. 35-26, Ex. Z).

On April 16, 2021, Plaintiff saw Dr. Miller (Doc. 35-24, Ex. T). Dr. Miller noted that Plaintiff had some swelling and Trismus (lockjaw), but "very little pain." (*Id.*). Dr. Miller planned to continue to monitor Plaintiff, "probably with no more meds," and schedule him for a follow-up evaluation on May 2, 2021 (*Id.*). Plaintiff contends that

6

Dr. Miller told him that he needed a strong anti-inflammatory drug but did not need to see an oral surgeon (Doc. 37, p. 5 at ¶ 28). Dr. Miller had Plaintiff sign "a permission slip to see an oral surgeon." (*Id.*). Plaintiff received neither an anti-inflammatory drug nor an appointment with an oral surgeon (*Id.*).

On April 27, 2021, Plaintiff submitted a prisoner grievance to the warden at HCI in which he stated that he could not fully open his mouth, he started to have pain again when chewing his food, and he was never given an anti-inflammatory or seen by an oral surgeon (Doc. 14-1, Ex. A, p. 2). The Chief Health Officer responded on May 14, 2021, noted that on April 15, 2021, Plaintiff informed both medical and dental that his issues were "resolving," and informed Plaintiff to advise healthcare staff of his recent complaints for "a possible referral to a Specialist." (*Id.*, Ex. A, p. 3). On May 21, 2021, Plaintiff submitted an appeal of the response, reiterating that he could not open his mouth fully or chew without pain and had never received an anti-inflammatory drug or seen an oral surgeon (*Id.*, Ex. A, p. 4). The Secretary's Office approved the grievance to the extent that it confirmed that Plaintiff would "be seen by the RMC Oral Surgeon." (*Id.*, Ex. A, p. 5).

On May 1, 2021, Plaintiff submitted an Inmate Sick-Call Request form in which he stated that he was still having problems, including pain while chewing food, numbness in his face, and limited mouth opening (Doc. 35-28, Ex. AB). He also stated that Nurse Uney told him he would see an oral surgeon, and Dr. Miller said he would receive an anti-inflammatory (*Id.*).

On May 5, 2021, Plaintiff submitted a grievance in which he asserted that although he had a medical appointment, when he arrived at the medical department he was told to leave without an explanation about whether he "didn't have a call-out or [his appointment] was cancelled" (Doc. 14-1, Ex. B, p. 7). On May 19, 2021, the Chief Health Officer responded by stating that he had reviewed Plaintiff's medical and dental records, which showed that Plaintiff was being treated for his condition, his condition was improving, and he needed to give his body more time to continue healing before a referral to a specialist would be approved (*Id.*, Ex. B, p. 8). On June 2, 2021, Plaintiff submitted an appeal of the response in which he stated that the response did not address the cancellation of his appointment, and that Dr. Miller had never sought to refer him to see a specialist (*Id.*, Ex. B, p. 9). The Secretary's Office responded that Plaintiff had grieved the matter in a prior grievance (*Id.*, Ex. B, p. 10).

On May 7, 2021, Plaintiff saw Dr. Miller (Doc. 35-20, Ex. T). Dr. Miller noted that Plaintiff had no swelling, his jaw opened a "normal distance," and he complained of numbness on the right side of his face and pain when chewing (*Id.*). Dr. Miller reminded Plaintiff of "how much he had healed so far" and that they "must remain patient." (*Id.*). Plaintiff contends that he and Dr. Miller had "a very strong disagreement," and Dr. Miller accused him of "faking." (Doc. 37, p. 6, ¶ 32). Plaintiff also asserts that he left after Dr. Miller gave him a "mechanical diet pass." (*Id.*).

On May 8, 2021, Plaintiff filed another grievance saying that he saw Dr. Miller the day before, told Dr. Miller he still couldn't fully open his mouth, had pain with

chewing, and had numbness, and Dr. Miller stated that he did not believe Plaintiff met the company's criteria to see an oral surgeon (Doc. 14-1, Ex. C, p. 12). Plaintiff requested a referral to an oral surgeon (*Id.*). The warden's office responded that the issue was addressed in Plaintiff's previous grievance, and Plaintiff needed to allow more time for healing (*Id.*, Ex. C, p. 13). After Plaintiff appealed the response on June 3, 2021 (*id.*, Ex. C, p. 14), the Secretary's Office responded on July 9, 2021 that Plaintiff's records revealed that he was seen by the oral surgeon on June 29, 2021 (*Id.*, Ex. C, p. 15).

On May 19, 2021, Plaintiff saw Nurse Buckley during sick call and complained of pain and numbness in his jaw, limited jaw opening, and increased pain while eating (Doc. 35-27, Ex. AA). She referred Plaintiff's chart to a clinician for further evaluation (*Id.*). On May 20, 2021, Nurse Uney scheduled Plaintiff to see the next available provider (Doc. 35-29, Ex. AC; Doc. 35-30, Ex. AD).

On May 25, 2021, Plaintiff saw a nurse during sick call for his jaw pain (Doc. 35-31, Ex. AE). The nurse noted that Plaintiff had pain when eating and limited mouth opening (*Id.*). But Plaintiff stated his condition had improved, including the headaches and swelling (*Id.*). Plaintiff asserts that he also saw Nurse Uney, who told him he would see an oral surgeon and had him sign a permission slip to do so (Doc. 37, p. 6, ¶ 35).

On June 3, 2021, Plaintiff saw Dr. Miller for continued pain and numbness on the right side of his face (Doc. 35-32, Ex. AF). Dr. Miller noted that Plaintiff would be

9

referred to an oral surgeon for an evaluation (*Id*.). Plaintiff argues that Dr. Miller referred him to the surgeon because Plaintiff had filed three grievances between April 27, 2021, and May 8, 2021, in which he complained about the medical care for his face and jaw (Doc. 37, p. 6, ¶ 36).

On June 4, 2021, Dr. Miller completed a Consultation Request form for Plaintiff, requesting that he see an oral surgeon for an evaluation and possible treatment plan (Doc. 35-33, Ex. AG). Dr. Miller noted that Plaintiff had no swelling and normal range of motion, but still had some stiffness, pain while chewing, and "bouts" of numbness (*Id*.). The request was approved by the Senior Dentist on June 15, 2021, and Plaintiff was scheduled to see an oral surgeon on June 29, 2021 (*Id*.).

On June 15, 2021, Plaintiff was transferred to the Reception and Medical Center (Doc. 35-32, Ex. AF). On June 29, 2021, Plaintiff was evaluated by the oral surgeon, Dr. Smith (Doc. 35-36, Ex. AJ). Dr. Smith noted that Plaintiff complained of pain when chewing and having tired muscles but had no swelling and the numbness was resolving (*Id*.). Dr. Smith continued conservative management and ordered Flexeril (muscle relaxant), Motrin (pain medicine), and a mechanical diet (*Id*., Doc. 35-35, Ex. AI).

Plaintiff followed up with Dr. Smith on August 10, 2021 (Doc. 35-39, Ex. AM). Plaintiff reported that his muscle stiffness was resolving, and the numbness had resolved (*Id*.). Dr. Smith's plan was to continue conservative management (*Id*.). He again ordered Flexeril and Motrin for Plaintiff (Doc. 35-40, Ex. AN). Plaintiff was

10

transferred back to HCI on September 28, 2021 (Doc. 35-42).

## II. Procedural Background

Plaintiff filed his initial complaint against Defendants Ricky Dixon, Secretary of the Florida Department of Corrections; Centurion of Florida, LLC.; Dr. Solorzano-Pallais; Dr. Burgos-Polo; Dr. Miller; Nurse Uney; and Dental Assistant Edwards in which he alleged Defendants were deliberately indifferent to his serious medical/dental needs in violation of the Eighth Amendment (Doc. 1). The complaint was dismissed with leave to amend (Doc. 13). Plaintiff filed an amended complaint in which he raised the same claims but named only Dr. Solorzano-Pallais, Dr. Miller, and Nurse Uney as defendants (Doc. 14). The claims against Dr. Solorzano-Pallais, and the claims against Dr. Miller and Nurse Uney in their official capacities, were dismissed (Doc. 15). The case proceeded solely against Dr. Miller and Nurse Uney in their individual capacities (*Id*.).

Defendants Miller and Uney answered the amended complaint (Doc. 27). The parties were directed to complete discovery by March 12, 2025, and to file summary judgment motions not later than May 12, 2025 (Doc. 27). Defendants moved for summary judgment on May 12, 2025 (Doc. 35). Plaintiff responded on May 29, 2025 (Doc. 37).

## III. Legal Standard

Defendants move for summary judgment. "Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits

11

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010) (citing Fed.R.Civ.P. 56). At this stage of the proceedings, "the evidence and all reasonable inferences from that evidence are viewed in the light most favorable to the nonmovant, but those inferences are drawn 'only to the extent supportable by the record.'" *Id*. (quoting *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010)). The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is stringent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Rule 56(c)(1) provides:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

The nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d

12

1573, 1577 (11th Cir. 1990). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## IV. Discussion

Plaintiff contends that Defendants are liable for violating his Eighth Amendment rights due to their deliberate indifference to his serious medical needs. The Eleventh Circuit has explained that

> Under Supreme Court precedent, "deliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). To prevail on a claim of deliberate indifference, plaintiffs "must satisfy both an objective and a subjective inquiry," *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003), and must establish a "necessary causal link" between the challenged conduct and their injuries, *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019). The objective inquiry turns on whether the plaintiff experienced an "objectively serious medical need." *Farrow*, 320 F.3d at 1243. The subjective inquiry, on the other hand, turns on whether the "prison official acted with an attitude of

13

'deliberate indifference' to [the] serious medical need." *Id*. A prison official acted with deliberate indifference if he (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness. *See Farmer v. Brennan*, 511 U.S. 825, 836–40, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As we recently reiterated, this third prong will be satisfied only if the plaintiff shows "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (*en banc*). Even when a defendant has subjective knowledge of a serious risk, "a defendant who 'responds reasonably' to [such] a risk ... 'cannot be found liable' under the Eighth Amendment." *Id*. at 1255 (quoting *Farmer*, 511 U.S. at 845, 114 S.Ct. 1970).

*Stalley v. Cumbie*, 124 F.4th 1273, 1283–84 (11th Cir. 2024).

The parties do not dispute that Plaintiff's medical needs were serious. They only dispute whether the Defendants acted with deliberate indifference to those needs (*See* Doc. 35 at 11-18). And given that after Plaintiff had his tooth pulled, he had a persistent infection with pain and swelling, the Court agrees that Plaintiff had a serious medical need that satisfies the objective component of a medical deliberate indifference claim. *See, e.g.*, *Davison v. Stephen Nicolou, P.A.*, 2018 WL 1278193, at *5 (S.D. Ga. Mar. 12, 2018) ("A bacterial infection, like the one Mr. Davison succumbed to, is deadly if left untreated and constitutes a serious medical need."). However, Plaintiff establishes neither that Dr. Miller and Nurse Uney acted with deliberate indifference to his medical needs, nor that their actions caused his injury.

A. Nurse Uney

The evidence does not show that Nurse Uney's actions rose to the level of subjective recklessness. She reasonably responded to Plaintiff's medical needs. She saw

14

Plaintiff and attempted to treat him several times. She made follow-up appointments for Plaintiff; ordered him antibiotics, pain injections, and oral pain medication several times; ordered lab work multiple times; and requested authorization for a CT scan, which Plaintiff received. When Plaintiff's symptoms persisted, she contacted a doctor and the Regional Medical Director, requesting a referral for Plaintiff to an oral surgeon or ENT.

Plaintiff contends that Nurse Uney "denied/delayed" [him] pain medication . . . ." (Doc. 14 at 12). But he does not specify when Nurse Uney allegedly denied or delayed him medication or present any evidence supporting his contention. Although he alleges that he received the last two pain medication injections in the middle of March 2021, he concedes he continued to receive oral pain medicine (Doc. 37, p. 3, ¶ 15). Moreover, neither Plaintiff's grievances nor the medical records show that Plaintiff requested pain medication, and Nurse Uney denied or delayed that medication.

Plaintiff also contends that Nurse Uney "denied/delayed Plaintiff outside medical help even though she stated she was 'lost' as to how to treat [his] medical problem." (Doc. 14 at 12). He alleges Nurse Uney made this statement to him on March 18, 2021 (Doc. 14 at p. 16). He concedes, however, that Nurse Uney asked the Chief Health Officer to send Plaintiff for an outside consultation with a doctor, but her request was denied (*Id.*). The medical records also reveal that on April 12, 2021, Nurse Uney e-mailed a doctor to discuss possibly getting a referral for Plaintiff to an ENT

15

(Doc. 35-21, Ex. U), and on April 14, 2021, Nurse Uney consulted with the Regional Medical Director, who suggested a referral to an oral surgeon, and she discussed the suggestion of a referral with the dentist (Doc. 35-23, Ex. W). But two days later, on April 16, 2021, Dr. Miller told Plaintiff that he did not believe Plaintiff needed to see an oral surgeon at that time (Doc. 14, p. 17). Plaintiff neither alleges nor presents evidence that Nurse Uney had authority to override Dr. Miller or any other physician and schedule Plaintiff for an appointment with an oral surgeon. Therefore, she cannot be deliberately indifferent for not doing so. *See Bauer v. Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011) ("A nurse is not deliberately indifferent when she reasonably follows a doctor's orders by administering prescribed medication to an inmate."); *Rosario v. Blakely*, 2013 WL 49475, at *9 (M.D. Fla. Jan. 3, 2013) ("Courts have held that nurses who are not empowered to take action contrary to a doctor's orders do not violate a prisoner's constitutional rights by failing to alleviate the prisoner's pain.") (citations omitted).

Based on the undisputed facts, no reasonable juror could find that Nurse Uney acted with subjective recklessness or caused Plaintiff any injury. Thus, Nurse Uney is entitled to summary judgment.

B.  Dr. Miller

The evidence also shows that Dr. Miller's conduct did not rise to the level of subjective recklessness. The relevant risk created by Dr. Miller's conduct was the harm and pain that could fall on Plaintiff if his condition was not treated. Dr. Miller

responded reasonably to that risk by (1) examining Plaintiff at least on nine days between March 5th and June 3rd, 2021; (2) prescribing pain medication, antibiotics, and special diet passes; and (3) ultimately referring Plaintiff to an oral surgeon when his symptoms failed to fully resolve after 90 days of conservative management.

Plaintiff contends that although Dr. Miller stated that Plaintiff needed to see an oral surgeon, Dr. Miller delayed in referring him to the surgeon (Doc. 37, p. 9). Plaintiff alleges that on March 26, 2021, Dr. Miller stated, "maybe we need to send you to an oral surgeon." (*Id.*, pp. 4-5, ¶23). He also alleges that when he saw Dr. Miller on April 2, 2021, Dr. Miller told him that were Plaintiff not in prison, "he would have already sent him to see an oral surgeon," but he was not going to do the paperwork for a referral because "he did not think his company would pay for" Plaintiff to see an oral surgeon (Doc. 14, p. 17). But Plaintiff does not address how the evidence shows that there were several periods when Plaintiff's symptoms were improving. His April 10, 2021 Inmate Sick-Call Request implies that his symptoms had improved because Plaintiff stated that his "headache is back, and [his] face [was] starting to swell again." (Doc. 35-21, Ex. U). And on April 15, 2021, Plaintiff stated that his face "went down a lot," he could open his "mouth a lot further," "it did not hurt to eat breakfast this morning," his "headache [was] gone," and the "swelling seems to be less." (Doc. 35-25, Ex. Y; Doc. 35-26, Ex. Z). He even suggested waiting "another week before we make a decision about an oral surgeon." (Doc. 35-25, Ex. Y). And several medical records note improvement of Plaintiff's condition (Docs. 35-9, Ex. I; 35-11, Ex. K; 35-

17

14, Ex. N; 35-16, Ex. P; 35-18, Ex. R; 35-20, Ex. T; 35-24, Ex. X).

When Dr. Miller saw Plaintiff again on April 16, 2021, he noted that "even though some swelling has returned, [Plaintiff] is getting better." (Doc. 35-24, Ex. X). Dr. Miller saw Plaintiff again on May 7, 2021, noted that Plaintiff had no swelling and normal mouth opening, and "remind[ed] him of how much he had healed so far, and [he] must remain patient." (Doc. 35-20, Ex. T).

When a prisoner's deliberate indifference claim is based on a delay of treatment, a constitutional violation occurs only where "it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified." *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (citations omitted). Moreover, "[a]n inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed." *Carroll v. Corr. Med. Servs.*, 160 F. App'x 848, 850 (11th Cir. 2005) (quoting *Hill v. DeKalb Reg'l Youth Pet. Ctr.*, 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)).

Plaintiff fails to show that it was apparent to Dr. Miller that a delay in referring him to an oral surgeon would detrimentally exacerbate his condition. During the relevant 90-day period, there were several occasions on which Plaintiff's symptoms were improving. Thus, it was reasonable for Dr. Miller not to refer Plaintiff to an oral surgeon earlier than he did and continue with conservative care. *See Logan v. Clarke*,

119 F.3d 647, 650 (8th Cir. 1997) ("Although the prison doctors may not have proceeded ... as quickly as hindsight perhaps allows us to think they should have, ... [t]he doctors made efforts to cure the problem in a reasonable and sensible manner."); *Whiting v. Wexford Health Sources, Inc.*, 181 F. Supp. 3d 489 (N.D. Ill. 2015), *aff'd*, 839 F.3d 658 (7th Cir. 2016) (prison doctor's decision to follow his employer's recommendation of course of antibiotics to treat prisoner's enlarged lymph nodes, resulting in two-month delay of biopsy was not deliberate indifference to pain prisoner experienced from his undiagnosed lymphoma in violation of the Eighth Amendment, even if doctor was aware that cancer was possible; antibiotics were not obviously ineffective, prisoner's condition improved for a short period while on antibiotics, and when prisoner's condition declined, doctor resubmitted biopsy request to employer).

Plaintiff also fails to present any evidence that such delay seriously exacerbated his injury. Indeed, it would be difficult for Plaintiff to make such a showing, considering that when he was transferred to see the oral surgeon, the treatment provided by the surgeon (oral pain medicine, a muscle relaxant, and a mechanical diet) was essentially the same as the treatment provided to him by Dr. Miller and the other medical staff at HCI.

Rather than demonstrating Dr. Miller was subjectively reckless, Plaintiff asks the Court to second-guess Dr. Miller's judgment to continue conservative management/care when Plaintiff was showing improvement. And this is not "a case where the treatment provided was so cursory that it amounted to no care at all." *See*

19

*Kinard v. Fla. Dep't of Corr.*, 2024 WL 4785003 (11th Cir. 2024) (citing *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (a jury could find prison medical providers were deliberately indifferent to prisoner's serious medical need where the treatment provided was "so cursory as to amount to no care at all.").

Plaintiff has failed to demonstrate Dr. Miller "acted with 'subjective recklessness as used in the criminal law'" or that he was subjectively aware that his conduct caused a substantial risk of serious harm to Plaintiff. *See, e.g.*, *Wade*, 106 F.4th at 1262. Also, because Dr. Miller responded reasonably to the risk of Plaintiff's condition, under *Wade*, Dr. Miller cannot be found liable of an Eighth Amendment violation.

Plaintiff also contends that Dr. Miller was deliberately indifferent to his serious medical needs because, although Dr. Miller told him on April 16, 2021, that he needed a strong anti-inflammatory medication, he never received one. But Plaintiff does not show Dr. Miller knew that his conduct in not providing Plaintiff an anti-inflammatory posed a substantial risk of serious harm to Plaintiff. Just the day before, on April 15, 2021, Plaintiff stated in his Inmate Sick-Call Request that he had no pain when eating, the swelling on his face decreased significantly, and he could open his mouth much wider (Doc. 35-26, Ex. Z). Dr. Miller's notes on April 16, 2021, reflect that although there was some swelling and decreased opening of the mouth, Plaintiff had very little pain (Doc. 35-20, Ex. T). The notes also show that Dr. Miller's plan was to monitor Plaintiff "probably with no more meds." (*Id.*). And on May 7, 2021, Dr. Miller

20

reminded Plaintiff that he was healing and "must remain patient." (*Id.*). Nowhere in his notes or elsewhere in the record is there any indication that Dr. Miller believed Plaintiff needed an anti-inflammatory but declined to provide Plaintiff with it.

Even assuming Dr. Miller knew that his conduct posed a substantial risk of serious harm to Plaintiff, Plaintiff still fails to establish deliberate indifference because Dr. Miller "responded reasonably" to the risk. *Wade*, 106 F. 4th at 1262. Dr. Miller continuously assessed Plaintiff's condition and made medical decisions consistent with Plaintiff's symptoms. This was a reasonable course considering all the circumstances, and no reasonable juror could find deliberate indifference.

Finally, Plaintiff fails to present any evidence that Dr. Miller's failure to provide him with an anti-inflammatory caused any injury. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) ("In order to prove deliberate indifference a prisoner must . . . show that the injury was caused by the defendant's wrongful conduct."). On this record, there is no evidence that Plaintiff's symptoms failed to improve or worsened because no anti-inflammatory was provided to him. *See, e.g., Hinson v. Bias*, 927 F.3d 1103, 1123 (11th Cir. 2019) (concluding that plaintiff did not establish causation for his medical deliberate indifference claim because plaintiff did not "present any medical evidence suggesting a link between the delay of treatment for any injuries he experienced during his arrest, on the one hand, and his ear-related problems, on the other").

21

In sum, based on the undisputed facts, Dr. Miller and Nurse Uney are entitled to summary judgment because Plaintiff fails to establish a medical deliberate indifference claim.

It is therefore **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion for Final Summary Judgment (Doc. 35) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of Defendants Dr. Dwayne Miller and Nurse Ashley Uney and against Plaintiff.

3. The Clerk is further directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on July 16, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to: *Pro Se* Plaintiff
            Counsel of Record

22